MICHIGAN STATE AFL-CIO v MICHIGAN EMPLOYMENT
RELATIONS COMMISSION

MICHIGAN EDUCATION ASSOCIATION v GOVERNOR

Docket Nos. 184125, 184126, 184227. Submitted April 4, 1995, at
Lansing. Decided August 1, 1995, at 9:15 A.M. Leave to appeal
sought.

The Michigan State AFL-CIO and others brought an action in the
Wayne Circuit Court against the Michigan Employment Rela-
tions Commission (MERC), seeking a declaration of rights and
injunctive relief with respect to certain provisions of 1994 PA
112, which amended the public employment relations act
(PERA), MCL 423.201 et seq.; MSA 17.455(1) et seq. The Michi-
gan Education Association (MEA) and others also brought a
similar action in the Wayne Circuit Court against the Governor
of Michigan and the MERC. The actions were consolidated. In
each action, the plaintiffs challenged the provisions of Act 112
on various constitutional grounds. The circuit court, Louis F.
Simmons, Jr., J., granted summary disposition for the plaintiffs
with respect to two provisions of Act 112, holding that § 2a(4),
MCL 423.202a(4); MSA 17.455(2a)(4), is unconstitutional insofar
as it imposes vicarious liability for unauthorized strikes on
unions that represent public school employees and that
§ 2a(10), MCL 423.202a(10); MSA 17.455(2a)(10), which man-
dates the issuance of injunctions against strikes without regard
to traditional equity factors, violates the doctrine of separation
of powers by invading the province of the judiciary. In all other
respects, the court found Act 112 to be constitutional and,
accordingly, granted summary disposition for the defendants.
The plaintiffs in the respective actions appealed separately, and
the appeals were consolidated.

The Court of Appeals held:

1. Section 17(1), MCL 423.217(1); MSA 17.455(17)(1), which
provides that a bargaining representative or an education

REFERENCES

Am Jur 2d, Constitutional Law §§ 524, 543, 775; Labor and Labor
Relations §§ 3518, 3519, 3531, 3533.

See ALR Index under Collective Bargaining; Labor and Employ-
ment; Public Officers and Employees; Strikes.

association may not veto a collective bargaining agreement that has been reached between a bargaining unit and a public school employer or require, prohibit, or prevent a bargaining unit from entering into or ratifying a collective bargaining agreement, does not violate the fundamental constitutional rights of public school employees to speak, associate, or organize as they see fit. Section 17(1) does not attempt to limit the right of individual public school employees to associate or affiliate or to decide among themselves whether to ratify or reject a proposed collective bargaining agreement. Rather, it prevents the shifting of the authority to ratify or reject from the members of the local bargaining unit to some regional, state, or national organization.

2. Although § 17(1) applies only to public school employees, it does not violate equal protection because it involves no fundamental interest or suspect classification and there is a rational basis for the classification employed. There was evidence presented that showed that the vast majority of work stoppages by public employees involved public school employees. It is constitutionally proper for the Legislature to address the problems inherent in work stoppages by public school employees without imposing the same remedial solution on all other public employees.

3. Subsections 3 and 4 of § 15, MCL 423.215(3),(4); MSA 17.455(15)(3),(4), which preclude certain items from being included in a collective bargaining agreement or from being the subject of bargaining between a public school employer and a bargaining representative of its employees, do not place constitutionally prohibited restraints on the rights of free speech and free association of public school employees. The clear intent of subsections 3 and 4 of § 15 is to make public school employers solely responsible for the enumerated subjects, not to restrain public school employees or their representatives from voicing their views with respect to those subjects. Because no fundamental right or suspect classification is involved, and because the limiting of those items that are the subject of bargaining is rationally related to the legitimate governmental goal of reducing work stoppages in the public schools, equal protection concerns are not implicated.

4. The inclusion in §§ 1(1)(i) and 6(1) of Act 112, MCL 423.201(1)(i), 423.206(6); MSA 17.455(1)(1)(i), 17.455(6)(1), of provisions that eliminate the distinction between strikes arising out of economic demands and strikes arising as the result by unfair labor practices and thereby eliminate the distinction drawn by the Supreme Court in *Rockwell v Crestwood School*

*Dist Bd of Ed,* 393 Mich 616 (1975), relative to the power of the MERC to allow reinstatement of public school employees who had engaged in a strike concerning unfair labor practices while not being able to reinstate public school employees who had engaged in a strike concerning economic issues does not violate public school employees' freedoms of speech and association. Those sections do not prohibit public school employees from protesting or responding to actual or alleged unfair labor practices; rather, they merely limit such protests and responses to means other than an illegal strike. Because the rule in *Rockwell* arose out of the language of the PERA then in effect, the Legislature was free to eliminate the possibility of reinstatement that was held to be available under the PERA before its amendment by Act 112.

5. The Legislature's elimination of the element of intent from the language of § 1(2), MCL 423.201(2); MSA 17.455(1)(2), that provides that a public employee's right of expression is not impaired as long as the expression does not interfere with the full, faithful, and proper performance of the duties of employment does not violate the First Amendment rights of free speech and free expression.

6. The term "strike" as used in the PERA clearly includes both the concerted activities of a number of employees and the act of an individual employee. The fact that some of the provisions of the PERA apply only where the strike arises out of the concerted actions of more than one person while other provisions can apply where there is a work stoppage by a single individual does not render the term "strike" vague in the constitutional sense. Accordingly, that portion of § 2a(4) that requires that the MERC fine each public school employee one day's pay for each full or partial day that the employee engaged in a strike is not rendered void for vagueness because the fine is to be imposed where one or more employees are found to have engaged in a strike.

7. Because the plaintiffs have cited no relevant authority for the claim that the mandatory nature of the fine that must be imposed pursuant to § 2a(4) offends due process, that claim is deemed to have been abandoned.

8. The fact that the circuit court declared two portions of Act 112 to be unconstitutional does not require that the act in its entirety must be found to be unconstitutional. The portions that were declared to be unconstitutional clearly were severable from the remainder of the statute.

Affirmed.

1. LABOR RELATIONS — PUBLIC SCHOOL EMPLOYEES — PUBLIC EMPLOY-
   MENT RELATIONS ACT — BARGAINING REPRESENTATIVES — FREE
   SPEECH — EQUAL PROTECTION.

   The provision in the public employment relations act as amended
   by 1994 PA 112 that provides that a bargaining representative
   or an education association may not veto a collective bargain-
   ing agreement that has been reached between a bargaining
   unit and a public school employer or require, prohibit, or
   prevent a bargaining unit from entering into or ratifying a
   collective bargaining agreement does not violate the fundamen-
   tal constitutional right of public school employees to speak,
   associate, or organize as they see fit, nor does it deny public
   school employees equal protection of the law (MCL 423.217[1];
   MSA 17.455[17][1]).

2. LABOR RELATIONS — PUBLIC SCHOOL EMPLOYEES — PUBLIC EMPLOY-
   MENT RELATIONS ACT — COLLECTIVE BARGAINING AGREEMENTS
   — SUBJECTS OF BARGAINING — FREE SPEECH — EQUAL PROTEC-
   TION.

   The provisions in the public employment relations act as
   amended by 1994 PA 112 that preclude certain items from
   being included in a collective bargaining agreement or from
   being the subject of bargaining between a public school em-
   ployer and a bargaining representative of its employees do not
   place constitutionally prohibited restraints on the rights of free
   speech and free association of public school employees or deny
   to public school employees equal protection of the law (MCL
   423.215[3],[4]; MSA 17.455[15][3],[4]).

3. LABOR RELATIONS — PUBLIC SCHOOL EMPLOYEES — PUBLIC EMPLOY-
   MENT RELATIONS ACT — ECONOMIC STRIKES — UNFAIR LABOR
   PRACTICES.

   The elimination of the distinction between strikes arising out of
   economic demands and strikes arising as the result of unfair
   labor practices by the amendment of the public employment
   relations act by 1994 PA 112 does not violate public school
   employees' rights of free speech and free association (MCL
   423.201[1][i], 423.206[6][1]; MSA 17.455[1][1][i], 17.455[6][1]).

*Sachs, Waldman, O'Hare, Helveston, Hodges &
Barnes, P.C.* (by *Theodore Sachs, Eileen Nowikow-
ski,* and *Andrew Nickelhoff*), for the Michigan
State AFL-CIO and others.

*Foster, Swift, Collins & Smith, P.C.* (by *Theodore*

*W. Swift, Stephen O. Schultz, Michael J. Bommarito,* and *Peter R. Albertins*), for the Michigan Education Association and others.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Christine A. Derdarian* and *Jon M. Deltorn,* Assistant Attorneys General, for the Governor of Michigan and the Michigan Employment Relations Commission.

Amici Curiae:

*Erwin B. Ellmann* and *George E. Bushnell, Jr.,* for the American Civil Liberties Union Fund of Michigan.

*Thrun, Maatsch & Nordberg, P.C.* (by *Kevin S. Harty* and *Robert G. Huber*), for the Michigan Association of School Boards.

Before: MacKenzie, P.J., and Corrigan and P. J. Clulo,* JJ.

Per Curiam. Plaintiffs in these consolidated cases appeal a March 16, 1995, order of the Wayne Circuit Court denying in large part their motions for summary disposition challenging amendments of the public employment relations act (PERA), MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.* We affirm.

I

On May 2, 1994, the Governor signed into law House Bill 5128, 1994 PA 112, which amends previous provisions of the PERA and adds new provisions. Act 112 expands the prohibition against strikes by public employees who are em-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ployed in the public schools. Act 112 also lessens the power of regional and statewide labor organizations over the decisions of local public school bargaining members in connection with the ratification of collective bargaining agreements, prohibits bargaining with respect to certain subjects by public school employers and the bargaining representatives of their employees, and prohibits public school employers from locking out employees who have not caused a total or partial caused a cessation of operations by means of a prohibited strike.

In July 1994, the Michigan State AFL-CIO and others filed a verified complaint for declaratory judgment and injunctive relief challenging the constitutionality of Act 112. The Michigan Education Association (MEA) and others commenced their action in August 1994. The cases were consolidated by stipulation, and cross motions for summary disposition were filed in November 1994.

On January 5, 1995, a partial consent judgment was entered, by which the parties agreed that certain provisions of the Administrative Procedures Act, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, would apply whenever a claim is made under § 2a of Act 112, MCL 423.202a; MSA 17.455(2a) that there is a strike by one or more public school employees or that there is a lockout by a public school employer. The judgment provides that it is dispositive of certain claims made by plaintiffs regarding the lack of a procedure comporting with due process for adjudicating claims that public school employees are engaged in an illegal strike.

In a fifty-eight-page amended opinion dated March 2, 1995, the circuit court found two provisions of Act 112 to be unconstitutional. The court struck § 2a(4), MCL 423.202a(4); MSA 17.455(2a)(4), which imposes vicarious liability on unions representing public school employees for unauthorized

strikes. The court also agreed that § 2a(10), MCL 423.202a(10); MSA 17.455(2a)(10), which mandates the issuance of injunctions against strikes without regard to traditional equity factors, violates the doctrine of separation of powers by invading the province of the judiciary.[1] In all other respects the circuit court agreed with defendants and rejected plaintiffs' challenges.

An order in conformity with the circuit court's opinion was entered on March 16, 1995.

Plaintiffs in the respective actions filed separate claims of appeal, as well as motions for immediate consideration, for a stay, and to expedite the appeals. This Court granted the motions and consolidated the appeals for decision.

II

Section 17(1) of Act 112, MCL 423.217(1); MSA 17.455(17)(1) provides:

> A bargaining representative or an education association shall not veto a collective bargaining agreement reached between a public school employer and a bargaining unit consisting of employees of the public school employer; shall not require the bargaining unit to obtain the ratification of an education association before or as a condition of entering into a collective bargaining agreement; and shall not in any other way prohibit or prevent the bargaining unit from entering into, ratifying, or executing a collective bargaining agreement. The power to decide whether or not to enter into, ratify, or execute a collective bargaining agreement with a public school employer rests solely with the members of the bargaining unit who are employees of the public school employer, and shall not be delegated to a bargaining representative or

---

[1] Because defendants did not cross appeal, these issues are not before this Court.

an education association or conditioned on approval by a bargaining representative or an education association.

Subsection 3, MCL 423.217(3); MSA 17.455(17)(3), defines "education association" as "an organization, whether organized on a county, regional, area, or state basis, in which employees of 1 or more public school employers participate and that exists for the common purpose of protecting and advancing the wages, hours, and working conditions of the organization's members." "Bargaining representative" is defined in § 1(1), MCL 423.201(1); MSA 17.455(1)(1) as "a labor organization recognized by an employer or certified by the [Michigan Employment Relations Commission] as the sole and exclusive bargaining representative of certain employees of the employer."

Plaintiffs argue that § 17(1) violates the fundamental right of public employees to speak, associate, and, thereby, organize as they see fit. They contend that this section improperly prohibits public employees from selecting, electing, or relying upon the knowledge and expertise of a parent or consulting organization.

The circuit court rejected the free speech and association objections to § 17 for the following reasons:

> In the case at bar section 17 does not purport to govern those persons or entities with whom governmental employees may associate or affiliate. Nor does it purport to limit the support or advice that one organization may give to another or to employees. What it does proscribe is the assignment by bargaining unit members of the right to ratify or reject a proposed collective bargaining agreement to their representatives or to some other organization. In essence it dictates who must

ratify or reject a collective bargaining agreement. As such section 17 affects collective bargaining rights and thus is well within the state's authority to recognize, or not, collective bargaining. Certainly if it is not a violation of the associational First Amendment rights of governmental employees for a governmental agency not to engage in collective bargaining at all, *Fraternal Order of Police [v Mayor & City Council of Ocean City, Maryland,* 916 F2d 919 (CA 4, 1990)]; or if consistent with these rights, a governmental agency may insist on direct dealings with its employees in grievance proceedings, *Smith [v Arkansas State Hwy Employees,* 441 US 463; 99 S Ct 1826; 60 L Ed 2d 360 (1979)], then it follows that the state may determine who is competent to ratify or reject a collective bargaining agreement. While it may be that the elimination of a union's power to approve or veto a proposed collective bargaining agreement will weaken the organizational strength of a local or regional union, yet this alone does not violate the First Amendment right of association.

We agree with the circuit court's analysis. Public employees do not have a First Amendment right to compel public employers to bargain with them. *Fraternal Order of Police, supra.* See also *Smith, supra* at 465, n 2, where the Supreme Court quoted with approval from an opinion of the Seventh Circuit Court of Appeals: "[T]here is no constitutional duty to bargain collectively with an exclusive bargaining agent." If the state is not constitutionally required to recognize public-sector collective bargaining, then it follows that the state may impose restrictions or conditions on public-sector bargaining, as long as those conditions or restrictions are not otherwise unlawful.

We hold that the restrictions imposed in § 17(1) are not unlawful. As the circuit court noted, § 17 does not attempt to limit the entities or individuals with whom governmental employees may asso-

ciate or affiliate. Instead, it merely defines the universe of those eligible to vote on the ratification of a collective bargaining agreement. We find this analogous to the state's right through the Michigan Employment Relations Commission to define the positions that belong in a local bargaining unit. *Michigan Ass'n of Public Employees v Michigan AFSCME Council 25,* 172 Mich App 761, 764-765; 432 NW2d 748 (1988). The state may, through an administrative agency, decide which positions belong in a bargaining unit; it likewise may prevent individuals or organizations outside the unit from exercising veto powers over the decisions of the local unit.

We emphasize that nothing in this analysis prevents public school employees from agreeing among themselves to vote to reject any contract that a regional, state, or national organization recommends be rejected. The only thing § 17 prevents is the shifting of the authority to ratify or reject a proposed collective bargaining agreement from the members of the local bargaining unit to a regional, state, or national organization.

Plaintiffs also contend that § 17(1) violates the equal protection guarantees of the federal and state constitutions. They argue that fundamental rights of speech and association are at stake and that the statute is subject to strict scrutiny. However, even if strict scrutiny is not required, plaintiffs argue that there is no rational basis for the decision to treat public school employees differently from other public employees. Plaintiffs contend that even if there is some basis for the Legislature's conclusion that the PERA should be amended, it is improper to single out public school employees.

Plaintiffs argue that the Legislature is required by equal protection either to make amendments

affecting all public employees or to make no amendments.

We agree with the circuit court that no fundamental interests or suspect classifications are at stake here. In *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 668; 232 NW2d 636 (1975), the Supreme Court noted that there are two tests used in equal protection cases.

> If the interest is "fundamental" or the classification "suspect," the court applies a "strict scrutiny" test requiring the state to show a "compelling" interest which justifies the classification. Rarely have courts sustained legislation subjected to this standard of review.
>
> Other legislation, principally social and economic, is subjected to review under the traditional equal protection test. The burden is on the person challenging the classification to show that it is without reasonable justification. It has been said that "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." A classification will stand unless it is shown to be "essentially arbitrary."

Because § 17(1) affects only the collective bargaining rights granted by the PERA to public school employees, plaintiffs' equal protection challenge must be analyzed under the rational basis test.

We agree with the circuit court that § 17(1) passes the rational basis test. The affidavit of Shlomo Sperka of the Michigan Department of Labor regarding work stoppages during the period from fiscal year 1988-89 through 1993-94 shows that public school employees account for the vast majority of work stoppages on record. The Legislature could reasonably have determined that labor relations involving public school employees warrant special treatment. The limitation on the power to ratify or reject a contract is related

rationally to the goal of preventing an impasse in collective bargaining. Because strikes and other disruptions of the school year are likely to result in the case of impasse, § 17 is rationally related to the legitimate goal of minimizing such disruptions. Moreover, by clearly limiting the locus of decision making to the employees of a local school district, Act 112 increases the likelihood that the ordinary processes of public opinion and local politics will be effective and not thwarted by nonlocal concerns advanced by individuals or entities other than the local employees.

We reject plaintiffs' contention that the Legislature is required to amend the PERA in ways that affect all public employees equally or not amend it at all. In *Metropolitan Funeral System Ass'n v Comm'r of Ins,* 331 Mich 185, 194; 49 NW2d 131 (1951), the Supreme Court stated (quoting from earlier cases):

> "A State may properly direct its legislation against what it deems an existing evil without covering the whole field of possible abuses. . . . The statute must be presumed to be aimed at an evil where experience shows it to be most felt, and to be deemed by the legislature coextensive with the practical need; and is not to be overthrown merely because other instances may be suggested to which also it might have been applied; that being a matter for the legislature to determine unless the case is very clear. . . . And it is not open to objection unless the classification is so lacking in any adequate or reasonable basis as to preclude the assumption that it was made in the exercise of the legislative judgment and discretion."

Because there is evidence to support a legislative conclusion that the prohibition against strikes contained in the PERA before amendment had been

most ineffective where applied with respect to public school education, the Legislature could properly amend the PERA in ways specifically addressing public school education and, by so doing, did not violate the equal protection guarantees by not including other public employees under the amendments.

III

Subsections 3 and 4 of § 15 of Act 112, MCL 423.215(3)(4); MSA 17.455(15)(3)(4), provide:

(3) Collective bargaining between a public school employer and a bargaining representative of its employees shall not include any of the following subjects:

(a) Who is or will be the policyholder of an employee group insurance benefit. This subdivision does not affect the duty to bargain with respect to types and levels of benefits and coverages for employee group insurance. A change or proposed change in a type or to a level of benefit, policy specification, or coverage for employee group insurance shall be bargained by the public school employer and the bargaining representative before the change may take effect.

(b) Establishment of the starting day for the school year and of the amount of pupil contact time required to receive full state school aid under section 1284 of the school code of 1976, Act No. 451 of the Public Acts of 1976, being section 380.1284 of the Michigan Compiled Laws, and under section 101 of the state school aid act of 1979, Act No. 94 of the Public Acts of 1979, being section 388.1701 of the Michigan Compiled Laws.

(c) Composition of site-based decision-making bodies established pursuant to section 1202a of Act No. 451 of the Public Acts of 1976, being section 380.1202a of the Michigan Compiled Laws, or of school improvement committees established under

section 1277 of Act No. 451 of the Public Acts of 1976, being section 380.1277 of the Michigan Compiled Laws.

(d) The decision of whether or not to provide or allow interdistrict or intradistrict open enrollment opportunity in a school district or of which grade levels or schools in which to allow such an open enrollment opportunity.

(e) The decision of whether or not to act as an authorizing body to grant a contract to organize and operate 1 or more public school academies under part 6a of Act No. 451 of the Public Acts of 1976, being sections 380.501 to 380.507 of the Michigan Compiled Laws, or the granting of a leave of absence to an employee of a school district to participate in a public school academy.

(f) The decision of whether or not to contract with a third party for 1 or more noninstructional support services; or the procedures for obtaining the contract; or the identity of the third party; or the impact of the contract on individual employees or the bargaining unit.

(g) The use of volunteers in providing services at its schools.

(h) Decisions concerning use of experimental or pilot programs and staffing of experimental or pilot programs and decisions concerning use of technology to deliver educational programs and services and staffing to provide the technology, or the impact of these decisions on individual employees or the bargaining unit.

(i) Any compensation or additional work assignment intended to reimburse an employee for or allow an employee to recover any monetary penalty imposed under this act.

(4) The matters described in subsection (3) are prohibited subjects of bargaining between a public school employer and a bargaining representative of its employees, and, for the purposes of this act, are within the sole authority of the public school employer to decide.

Plaintiffs contend that these subsections violate

the freedoms of speech and association because they prohibit negotiation or discussion of certain subjects on the basis of the content or nature of the subject. Plaintiffs interpret these provisions as prohibiting even voluntary discussion of these subjects by amenable public employers and employees. Plaintiffs argue that this amounts to a prior restraint on the freedom of speech or on their right to associate and make their views known to their employer.

The circuit court concluded that these provisions do not violate the freedoms of speech and association by interpreting them in light of the distinctions drawn in the law of labor relations between mandatory, permissive, and illegal subjects of bargaining:

> Generally subjects of collective bargaining may be classified as mandatory, permissive and illegal. *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 54 [214 NW2d 803] (1974). A mandatory subject of bargaining is one over which the parties are required to bargain if it has been proposed by either party and neither party may take unilateral action on the subject absent an impasse in the negotiations. *Id.* 54-55. A permissive subject is one that the parties need not bargain over, but may bargain by mutual agreement and neither side may insist on bargaining to a point of impasse. *Id.* 54, n 6. In contrast, an illegal subject of collective bargaining is a provision that is unlawful under the collective bargaining statute or other applicable statute. *Id.* 54-55, n 6. As noted in *Police Officers, supra,* 55, n 6:
>
> "The parties are not forbidden from discussing matters which are illegal subjects of bargaining but a contract provision embodying an illegal subject is . . . unenforceable."
>
> In the case at bar section 15(4) does not use the phrase "illegal subject of collective bargaining" but rather "prohibited subject" of collective bar-

gaining. The Court construes these phrases to be synonymous given the context and subject matter of section[s] 15(3), (4). In any event there is no expressed intent to foreclose discussion on these matters. Rather what was intended was to foreclose the possibility that these areas could ever be the subject of bargaining such that a school district could be found to have committed an unfair labor practice by refusing to bargain over them or that they could ever become part of a collective bargaining agreement. Finally, there is nothing in these sections that . . . purports to restrain public school employees or their representatives from making their views on these subjects known to a local school board during a public meeting of the board.

We find the circuit court's interpretation of these subsections to be a reasonable one. Although the language of subsection 3 could be read as categorically prohibiting even voluntary discussion regarding the subjects, thus raising First Amendment concerns, we hold that when subsections 3 and 4 are read together they evince a legislative intent to make public school employers solely responsible for these subjects by prohibiting them from being the subjects of enforceable contract provisions and by eliminating any duty to bargain regarding them. Moreover, we note that public employers have a duty to bargain with representatives of their employees, not because of common law or constitutional right, but because §§ 10(1)(e) and 11 of the PERA, MCL 423.210(1)(e), 423.211; MSA 17.455(10)(1)(e), 17.455(11), require it. If the duty to bargain is imposed solely by statute, then the duty to bargain may be limited by statute.

Plaintiffs contend that these provisions also violate equal protection. They argue that there can be no justification under strict scrutiny or even under the rational basis test for prohibiting the

discussion of these issues. We disagree. Once again, we hold that the rational basis test must be used because no fundamental rights or suspect classifications are at issue. We agree with the circuit court that these provisions pass the test.

> A review of the various subsections in section 15(3) show[s] that subsection[s] (b)-(h) directly relate to the delivery of public school services. Since they do not relate to non-public school issues, an equal protection challenge to these is essentially moot. As to the subsection (a) which gives the public school employer the power to choose the policyholder of an employee group insurance, defendants convincingly argue that this could be justified on a legislative belief for a need to enact some cost cutting measures in light of the uncertain impact of the passage of Proposal A. Importantly, the legislature has not taken off the bargaining table the issue of benefit levels, but rather who will provide them. Given that certain benefits are agreed to, subsection (a) will insure that school employers will be able to select the least costly provider. Finally, subsection (i) relates to the mandatory imposition of fines enacted in section 2a. It is reasonably related to this in that it ensures that as where a fine for striking is imposed, an employee will not be able to escape through the collective bargaining process. In short, the Court finds that the provisions of section 15 are reasonably related to a valid legislative goal and they do not offend equal protection.

We also agree with defendants that the decision to exclude these subjects is rationally related to the legitimate governmental goal of reducing work stoppages in the public schools by removing from bargaining perennially "thorny" subjects, such as subcontracting and the date the school year starts.

IV

In *Rockwell v Crestwood School Dist Bd of Ed,*

393 Mich 616; 227 NW2d 736 (1975), the Supreme Court held that public employers can discipline or discharge public employees for engaging in an illegal strike pursuant to § 6 of the PERA, MCL 423.206; MSA 17.455(6), even if those public employees could not be disciplined or discharged on other grounds except pursuant to the provisions of the teacher tenure act, MCL 38.71 et seq.; MSA 15.1971 et seq. However, in Rockwell, the Court also adopted the federal labor-law doctrine that distinguishes a strike concerning economic issues from a strike concerning unfair labor practices. Whereas a strike concerning economic issues involves concerted action to pressure an employer to give in to bargaining demands, a strike concerning unfair labor practices is a concerted protest against an allegedly unlawful action by the employer. Persons involved in a strike concerning economic issues are more at risk than those involved in strikes concerning unfair labor practices because they can be replaced. Persons involved in strikes concerning unfair labor practices who are replaced may be entitled to reinstatement and back pay. A strike that begins as a strike concerning economic issues can be converted into a strike concerning an unfair labor practice if an employer commits an unfair labor practice during the strike. Under federal law, the National Labor Relations Board is authorized to balance equities under the circumstances and determine whether any improper conduct by striking employees forfeits their claims for reinstatement and back pay. Similarly, in Rockwell, supra at 639, the Court held:

> If MERC should determine that the employing school district committed an unfair labor practice, MERC may, despite the illegality of the teachers' strike, order reinstatement.

\* \* \*

If the MERC finds that an unfair labor practice or other misconduct was committed by both sides, it should balance the competing equities to reach a result best effectuating the goals of the act.

Act 112 eliminates the distinction between strikes concerning economic issues and strikes concerning unfair labor practices in public school employment. Section 1(1)(i), MCL 423.201(1)(i); MSA 17.455(1)(1)(i), provides:

> "Strike" means the concerted failure to report for duty, the willful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful, and proper performance of the duties of employment for the purpose of inducing, influencing, or coercing a change in employment conditions, compensation, or the rights, privileges, or obligations of employment. For employees of a public school employer, strike also includes an action described in this subdivision that is taken for the purpose of protesting or responding to an act alleged or determined to be an unfair labor practice committed by the public school employer.

Similarly, § 6(1), MCL 423.206(1); MSA 17.455(6)(1), provides:

> Notwithstanding the provisions of any other law, a public employee who, by concerted action with others and without the lawful approval of his or her superior, willfully absents himself or herself from his or her position, or abstains in whole or in part from the full, faithful and proper performance of his or her duties for the purpose of inducing, influencing or coercing a change in employment conditions, compensation, or the rights, privileges, or obligations of employment, or a public employee employed by a public school employer

who engages in an action described in this subsection for the purpose of protesting or responding to an act alleged or determined to be an unfair labor practice committed by the public school employer, shall be considered to be on strike.

Plaintiffs argue that these provisions violate public school employees' freedoms of speech and association by prohibiting employees from protesting or responding to actual or alleged unfair labor practices committed by public school employers. They argue that the amendment amounts to a restriction on speech or expressive conduct based on the content of the speech or conduct, in this case the expression of unhappiness regarding an alleged unfair labor practice committed by the employer. Plaintiffs note that the United States Supreme Court in *R A V v St Paul,* 505 US 377; 112 S Ct 2538; 120 L Ed 2d 305 (1992), struck down a municipal hate-crime ordinance because the ordinance, which regulated only unprotected "fighting words," did so on a selective basis by applying only to racial and other unlawful discriminatory epithets. Plaintiffs argue that even if strike activity is not protected conduct, the state may not selectively prohibit such conduct on the basis of its expressive content, in this case the protesting of an unfair labor practice.

In *Rockwell,* the Supreme Court held that the MERC could, but need not, order reinstatement of illegally striking teachers if it finds that the school district committed an unfair labor practice. This conclusion was reached on the basis of federal precedent regarding the distinction between a strike concerning economic issues and a strike concerning unfair labor practices, as well as § 16(b) of the PERA, MCL 423.216(b); MSA 17.455(16)(b), which gives the MERC power to "take such affirma-

tive action including reinstatement of employees, with or without back pay, as will effectuate the policies of this act." *Rockwell, supra* at 637, 639, 641. Because the possibility of reinstatement exists by virtue of statute, we hold that the Legislature may restrict or remove entirely the possibility of reinstatement for employees engaging in certain forms of misconduct. That is what the Legislature did here. The Legislature chose to define strikes of public school employees to include strikes concerning unfair labor practices. By doing so the Legislature did not prohibit the free exercise of public school employees' right to speak and be heard regarding matters of interest. Section 1(2) of Act 112, MCL 423.201(2); MSA 17.455(1)(2), provides:

> This act does not limit, impair, or affect the right of a public employee to the expression or communication of a view, grievance, complaint, or opinion on any matter related to the conditions or compensation of public employment or their betterment as long as the expression or communication does not interfere with the full, faithful, and proper performance of the duties of employment.

Any public school employee, or indeed any citizen, who wishes to protest may do so by lawful means, such as informational picketing, passing out leaflets, or addressing the school board during a public comment period. A citizen may also choose to protest by violating the law, e.g., by staging a sit-in or other form of trespass protest. When citizens do so, they must face the consequences of their actions, however laudable their motives. Public school employees now face the same situation in connection with disputes regarding their employment. They may protest the actions of the school district that they believe are unwise or illegal. If they do so by legal means, their actions are pro-

tected. However, if they do so by illegal means, whether by trespass or by strike, they must face the consequences.

The Legislature's inclusion of strikes concerning unfair labor practices in the category of prohibited strikes is nothing more than a clarification of the meaning of the strike prohibition in the PERA and is not a content-based restriction on expressive conduct. If it were, then the absurd result would follow that although the Legislature could have chosen to prohibit both strikes concerning economic issues and strikes concerning unfair labor practices from the outset, it is forbidden to do so after the statute is interpreted as giving the MERC authority to order the reinstatement with back pay of persons engaged in strikes concerning unfair labor practices.

Plaintiffs make the following argument in the alternative. Before the amendments made by Act 112, former § 1(a), of the PERA, former MCL 423.201(a); MSA 17.455(1)(a), defined "strike" without reference to unfair labor practice strikes committed by public school employees. The last part of the former definition of "strike" provided:

> This act shall not be construed to limit, impair, or affect the right of a public employee to the expression or communication of a view, grievance, complaint or opinion on any matter related to the conditions or compensation of public employment or their betterment, so long as the same *is not designed to* and does not interfere with the full, faithful and proper performance of the duties of employment. (Emphasis added.)

The substance of this provision is contained in § 1(2) of Act 112, MCL 423.201(2); MSA 17.455(1) (2). As plaintiffs note, Act 112 eliminates the phrase "is not designed to" from this provision.

Plaintiffs contend that this deletion is unconstitutional because it blurs the distinction between intended and unintended effects and, thereby, impermissibly intrudes upon the free speech rights of public employees. Plaintiffs cite authority for the proposition that free speech may be curtailed on the basis of its likely effects only if the speech or expression is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. *Brandenburg v Ohio,* 395 US 444, 447-448; 89 S Ct 1827; 23 L Ed 2d 430 (1969); *Texas v Johnson,* 491 US 397, 408-409; 109 S Ct 2533; 105 L Ed 2d 342 (1989). Plaintiffs contend that "directed to" is synonymous with "designed to," and that the elimination of the latter phrase from the statute renders it unconstitutional.

The circuit court rejected this argument for the following reasons:

> It may be that as a general proposition government may not proscribe advocacy of unlawful activity unless it is "directed to inciting or producing imminent lawless action". *Johnson, supra,* 491 US 409, quoting *Brandenburg, supra,* 395 US 447, and that the Court's use of the word "directed" is synonymous with "intended" nevertheless neither *Johnson* nor *Brandenburg* were cases that arose out of a governmental employment case.
>
> As intimated above, the cases are clear that the government, as an employer, may take action against its employees in response to employees' "speech" that would not be otherwise tolerated. As noted in the plurality opinion in *Waters* [v *Churchill,* 511 US —; 114 S Ct 1878; 128 L Ed 2d 686, 697 (1994)]:
>
> "To begin with, even many of the most fundamental maxims of our First Amendment jurisprudence cannot reasonably be applied to speech by governmental employees."
>
> Because neither *Johnson* nor *Brandenburg* were

employment cases, it is somewhat doubtful that their holdings are transferable to the arena of governmental employee free speech rights.

In the realm of such rights, it is by now generally agreed that for speech by a governmental employee to be protected by the First Amendment, the speech must relate to "matters of public concern" and that it must not be outweighed by the interest of the government as an employer in promoting the efficiency of the public services it performs through its employees. *Connick v Myers,* 461 US 138, 142; 103 S Ct 1684; 75 L Ed 2d 708 (1983), *Waters, supra,* 128 L Ed 2d 694-695. Speech that causes disruptions in the work place, under these cases, simply is not protected. *Connick, supra,* 461 US 151-152; *Waters, supra,* 128 L Ed 2d 702-703. Notably there is no requirement in these cases that the disturbance be the intended consequence of the speech. Rather it appears that it is sufficient to show that the speech resulted in a disruption to the work place without regard to motive. In the case at bar, therefore, the legislature's deleting the element of intent from what is now section 1(2) cannot be seen as violative of any First Amendment right.

We find the circuit court's analysis persuasive and adopt it as our own. In addition, we believe that the deletion of the intent requirement does not expose public school employees to possible discipline or discharge simply because the effect of their otherwise protected speech incites or encourages a strike. The language of § 1(2) states that Act 112

"does not limit, impair, or affect the right of a public employee to the expression or communication of a view . . . on any matter related to . . . public employment . . . as long as the expression or communication does not interfere with the full, faithful, and proper performance of the duties of employment."

We therefore hold that Act 112 is not meant to impair the communicative rights of public employees, except to the extent that a public employee's expression or communication somehow interferes with the proper performance of that particular public employee's duties. For example, a public employee who contends that she is not engaged in a work stoppage, but rather is simply expressing her views by picketing during hours when she is otherwise expected to be in the classroom, would be subject to discipline because her communicative act, while otherwise proper and lawful, interferes with the performance of her duties.

We reject plaintiffs' equal protection challenge to these provisions. Although there may be no rational basis in the abstract for distinguishing between public school employees and other public employees who provide important, indeed crucial, services, the Legislature did not make the distinction in the abstract, but rather on the basis of data indicating that public school labor relations warranted special treatment. As noted above, the Legislature had a rational basis for concluding that work stoppages in public school employment required special attention.

V

Subsections 1 and 2 of § 2a of Act 112 provide that if public school employers allege that there is a strike or if a bargaining representative alleges that there is a lockout, they must notify the MERC. Subsection 3 requires the MERC to conduct a hearing to determine whether an illegal strike or lockout has occurred. Subsection 4 provides:

If, after a hearing under subsection (3), a majority of the commission finds that 1 or more public

school employees engaged in a strike in violation of section 2, the commission shall fine each public school employee an amount equal to 1 day of pay for that public school employee for each full or partial day that he or she engaged in the strike and shall fine the bargaining representative of the public school employee or employees $5,000.00 for each full or partial day the public school employee or employee is engaged in the strike.[2]

Plaintiffs raise two due process challenges to Act 112.[3]

Plaintiffs contend that Act 112 does not provide constitutionally adequate notice regarding the proscribed conduct punishable by what plaintiffs characterize as the quasi-criminal fines imposed by § 2a(4). Plaintiffs note that a fine must be imposed under that section if the MERC finds that one or more public school employees engaged in a strike in violation of § 2, which implies that a strike can involve only one individual. However, § 6(1) states that "a public employee who, by concerted action with others and without the lawful approval of his or her superior," engages in a work stoppage shall be considered to be on strike. Plaintiffs argue that this provision appears to contemplate only concerted action, which would appear to eliminate the possibility of a one-person strike. Moreover, "strike" is defined in § 1(1)(i) to mean "the concerted failure to report for duty, the willful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful, and proper performance of the duties of employment" for the purpose of influencing the

---

[2] The latter half of the last sentence of this subsection was struck as unconstitutional by the circuit court.

[3] Although most of the due process challenges were resolved by the January 5, 1995, partial consent judgment, the last paragraph of the judgment excepts "claims asserted as to adequacy of notice as to conduct proscribed by the Act."

employer. Plaintiffs note that this definition appears to embody both the notion of concerted action and the wilful absence from an individual's position, and therefore compounds the confusion generated by the other provisions. Plaintiffs contend that these ambiguities or inconsistencies deprive a reasonable public employee of adequate notice of the conduct proscribed.

Plaintiffs also note that the per diem fine imposed pursuant to § 2a(4) is inflexible, unconditional, and mandatory. Plaintiffs contend that the failure to provide for consideration of extenuating circumstances or lessened culpability offends basic concepts of justice and due process.

A statute may be challenged for vagueness on the ground that it does not provide fair notice of the conduct proscribed or that it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed. Challenges that do not involve First Amendment freedoms must be examined in light of the facts of the case at hand. *United States v Nat'l Dairy Products Corp,* 372 US 29, 36; 83 S Ct 594; 9 L Ed 2d 561 (1963). A person has standing to raise a vagueness challenge only if the statute is vague as applied to his conduct. *People v Cavaiani,* 172 Mich App 706, 714; 432 NW2d 409 (1988).

Although plaintiffs have raised a host of First Amendment issues, we find that none of them have any merit, and, in any event, they are irrelevant to the issue at hand. Plaintiffs do not contend that the lack of notice regarding the proper meaning of "strike" impinges upon any First Amendment rights they may have; rather, they contend that Act 112 fails to give adequate notice of the conduct proscribed. For these reasons, and because the statute has not yet been applied to any con-

duct, plaintiffs do not have standing to raise the issue.

Even if plaintiffs had standing, their claim is without merit. Whether the fine defined by § 2a(4) is a criminal penalty, a civil infraction, or otherwise, we find that the statute is not vague because it gives adequate notice.

A statute that either forbids or requires the doing of an act in terms so vague that people of common intelligence necessarily must guess at its meaning and differ with regard to its application violates the first essential of due process of law. However, a statute is not vague when the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises, or even the words themselves, if they possess a common and generally accepted meaning. *Cavaiani, supra.* We believe that the statute can easily be interpreted to avoid the contradictions and ambiguities plaintiffs posit. Section 1(1)(i) defines "strike" in the disjunctive to include both concerted activity and the wilful withholding of labor by individual employees, because those different sorts of "strikes" are treated differently under Act 112. Under § 2a(4), a public school employee who engages in any type of "strike," whether of the concerted or individual variety, is subject to a fine. Under § 6, however, only a concerted action constitutes a strike, triggering possible discipline up to and including discharge. Whereas a decision to impose a fine is made by the MERC under § 2a, the decision whether to discipline an employee for engaging in a concerted strike under § 6(2) is made by the public employer, subject to review in the circuit court. This distinction is highlighted by the last sentence of § 6(2): "This subsection does not apply to a penalty imposed under section 2a." We there-

fore conclude that the statute is not internally inconsistent.

We also hold that the definition of "strike" in § 1(1)(i) is not unconstitutionally vague. It clearly covers concerted failure to report for duty, as well as wilful failure to work or work diligently for the purpose of putting pressure on a public employer. An ordinary public school employee is given adequate notice by this definition of the conduct proscribed, as well as the possible penalties under §§ 2a(4) and 6(2).

The only authority cited by plaintiffs for their claim that the provision of mandatory, automatic punishment, without consideration of extenuating circumstances, offends due process is not on point and is irrelevant. Because plaintiffs have failed to offer any authority for their position, it must be considered abandoned. *Cramer v Metropolitan Savings Ass'n (Amended Opinion)*, 136 Mich App 387, 400; 357 NW2d 51 (1983); *Wiand v Wiand*, 178 Mich App 137, 150; 443 NW2d 464 (1989).

VI

Plaintiffs' final argument is that Act 112 must be stricken in its entirety because the constitutional infirmity of various of its provisions has been demonstrated. We disagree.

MCL 8.5; MSA 2.216 provides:

> In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:
> If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without

the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

When a portion of an act is invalid in all possible applications, the invalid portion may be deleted and the court may determine by rules of legislative intent whether the valid portion of the act shall be enforced. The law enforced after severance must be reasonable in light of the act as originally drafted. Independence of the valid from invalid parts of an act does not depend on their being located in separate sections. When the valid object of the act can be achieved without the invalid part, the act will be upheld. *Republic Airlines, Inc v Dep't of Treasury,* 169 Mich App 674, 685; 427 NW2d 182 (1988).

Because the circuit court found invalid only two relatively minor parts of Act 112, and because this Court agrees with the circuit court that plaintiffs' remaining challenges are without merit, the remainder of Act 112 must be upheld.

In the alternative, plaintiffs contend the circuit court erred in striking only the second sentence of § 2a(10), which would have required a court to grant injunctive relief in the case of a strike or lockout without regard to the usual factors justifying the granting of equitable relief. The circuit court did so because it found that the remaining portions of this section stand on their own, and because no argument had been made that those provisions violate separation of powers.

Plaintiffs contend that the circuit court erred because they never "parsed" their separation of powers argument. They therefore contend that the circuit court should have addressed their concerns regarding the other portions of this subsection.

However, plaintiffs do not specify what those challenges are, nor do they cite any authority or make any arguments for the proposition that the remaining portions of subsection 10 are unconstitutional. This claim of error must therefore be considered abandoned. *Cramer, supra,* and *Wiand, supra.*

Affirmed.