# STATE OF MICHIGAN

# COURT OF APPEALS

INTERURBAN TRANSIT PARTNERSHIP,

      Respondent-Appellant,

v

AMALGAMATED TRANSIT UNION LOCAL
836,

      Charging Party-Appellee.

UNPUBLISHED
September 27, 2018

No. 339518
MERC
LC No. 16-001352

Before: TUKEL, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Respondent, Interurban Transit Partnership, appeals the decision and order of the Michigan Employment Relations Commission (MERC), holding that respondent violated MCL 423.210(1)(a) and (c) of the Public Employment Relations Act (PERA), MCL 423.201 *et seq*., by suspending employee Louis DeShane, a member of charging party, Amalgamated Transit Union (the Union), for participating in a sit-in demonstration that disrupted respondent's January 27, 2016 board meeting, and by refusing to grant him Union leave under a provision of the parties' collective bargaining agreement (CBA). For the reasons set forth below, we affirm.

## I. RELEVANT FACTS

Respondent operates a municipal mass transit system in Grand Rapids, Michigan. The Union represents a bargaining unit of approximately 320 drivers and maintenance mechanics employed by respondent. Louis DeShane is a bus driver employed by respondent and a member of the Union. Respondent and the Union were parties to a collective bargaining agreement covering the period May 7, 2012, through June 30, 2015. The parties engaged in negotiations for a successor collective bargaining agreement since December 9, 2014, but were unable to reach a new agreement. It is undisputed that in late July or August of 2015, the Union engaged in various public activities to support its bargaining efforts, including leafletting, demonstrations, picketing, and social media postings.

On January 27, 2016, respondent's board of directors held a regularly scheduled meeting at the Rapid Central Station's second floor conference room. Several of respondent's drivers, including DeShane, and some non-employees attended the meeting to express their support for the Union's position in the contract negotiations. They were all dressed in shirts displaying the Union's logo. The Union President, Richard Jackson, also attended the meeting. DeShane was

not in uniform, and was not on duty or scheduled to work. During the public comment portion of the meeting, DeShane accused the Board of not wanting to negotiate. As the meeting progressed, DeShane, Jackson, and some non-employees turned their chairs around so that their backs were facing the Board. When the Board voted to go into executive session to discuss the issue, DeShane and some of the non-employees sat down on the floor and began loudly chanting slogans such as "negotiate or retaliate." At that point, the Board meeting came to halt. Ten minutes after the demonstration began; respondent's Chief Operating Officer Brian Pouget approached DeShane and asked him to stop. When DeShane did not respond, Pouget told him that he was putting his job in jeopardy if he continued the sit-in demonstration. DeShane told Pouget to speak with Jackson. After Pouget spoke to Jackson, Jackson advised DeShane to leave but stated that he did not agree with Pouget's view that DeShane's activities were not protected. DeShane then left the conference room. The police were later called and they spoke with the remaining protesters who then left; no arrests were made. Afterwards, the Board recommenced its meeting and held its executive session.

A few days later, on February 4, 2016, Jackson sent an email to Steve Schipper, the transportation manager, requesting Union leave for DeShane for February 5, 2016, but the request was denied. When Jackson questioned Schipper about the denial, Schipper explained that DeShane could not have time off because he was not a Union officer or representative. Schipper testified that he issued the denial after he reviewed the CBA and consulted with Pouget.

On February 11, 2016, approximately two weeks after the board meeting, respondent suspended DeShane indefinitely for his participation in the demonstration. On February 25, 2016, DeShane's indefinite suspension was changed to a 30-day suspension. Pouget testified that the 30-day suspension was for DeShane's disruptive activity at the meeting and his failure to follow Pouget's direction to leave. The Union filed charges on February 17, 2016, alleging that respondent unlawfully interfered with DeShane's § 9 rights in violation of § 10(1)(a) of PERA, unlawfully discriminated against him in violation of § 10(1)(c)[1] by suspending DeShane without pay for participating in a sit-in at respondent's January 27, 2016 board meeting, and denying his request for union leave. Respondent moved for summary disposition on the ground that it did not unlawfully discriminate or interfere with DeShane's rights because he engaged in an unlawful unprotected sit-in demonstration that disrupted respondent's board meeting.

---

[1] MCL 423.210(1) provides in relevant part as follows:

A public employer or an officer or agent of a public employer shall not do any of the following:

(a) Interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed in section 9.

(b) Discriminate in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization.

After conducting an evidentiary hearing, the Administrative Law Judge (ALJ) concluded that respondent unlawfully interfered with DeShane's rights under the contract by issuing a 30-day unpaid suspension and denying his union leave. Respondent filed exceptions to the ALJ's decision. MERC adopted the ALJ's findings of fact and analysis. This appeal ensued.

## II. STANDARD OF REVIEW

In *Calhoun Intermediate Sch Dist v Calhoun Intermediate Ed Ass'n*, 314 Mich App 41, 46; 885 NW2d 310 (2016), this Court set forth the applicable standard for reviewing decisions from MERC:

> We review MERC decisions pursuant to Const 1963, art 6, § 28, and MCL 432.216(e). MERC's factual findings are conclusive if they are supported by competent, material, and substantial evidence on the record considered as a whole. MERC's legal determinations may not be disturbed unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law. We review de novo MERC's legal rulings. [Quotation marks and citations omitted.]

Michigan courts should "acknowledge[] the expertise and judgment possessed by the MERC in the labor relations arena[,]" and should defer to MERC's factual findings. *St Clair Intermediate Sch Dist v Intermediate Ed Ass'n/Mich Ed Ass'n*, 458 Mich 540, 553; 581 NW2d 707 (1998). MERC has been entrusted with the interpretation and enforcement of the PERA, a specialized and "politically sensitive" area of law. *Van Buren Co Ed Ass'n v Decatur Pub Sch*, 309 Mich App 630, 638; 872 NW2d 710 (2015), quoting *Kent Co Deputy Sheriffs' Ass'n v Kent Co Sheriff*, 238 Mich App 310, 313; 605 NW2d 363 (1999). We will reverse MERC's determination only upon a clear showing of error. *AFSCME Council 25 v Faust Pub Library*, 311 Mich App 449, 453; 875 NW2d 254 (2015). "This evidentiary standard is equal to the amount of evidence that a reasonable mind would accept as sufficient to support a conclusion. While it consists of more than a scintilla of evidence, it may be substantially less than a preponderance." *Mount Pleasant Pub Sch v Mich AFSCME Council 25*, 302 Mich App 600, 615; 840 NW2d 750 (2013) (quotations marks and citation omitted). Review of MERC's "factual findings . . . must be undertaken with sensitivity, and due deference must be accorded to administrative expertise." *Gogebic Community College Mich Ed Support Personnel Ass'n v Gogebic Community College*, 246 Mich App 342, 348-349; 632 NW2d 517 (2001) (citation omitted). Reviewing courts should not invade the exclusive fact-finding province of administrative agencies by displacing an agency's choice between two reasonably differing views of the evidence. *MERC v Detroit Symphony Orchestra, Inc*, 393 Mich 116, 124; 223 NW2d 283 (1974).

## III. ANALYSIS

### A. The 30-Day Suspension

Section 9 of PERA, MCL 423.209(1)(a), provides in relevant part that public employees may:

Organize together or form, join, or assist in labor organizations; engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection; or negotiate or bargain collectively with their public employers through representatives of their own free choice.

Section 10 or PERA, MCL 423.210, provides in relevant part:

(1) A public employer or an officer or agent of a public employer shall not do any of the following:

(a) Interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed in section 9.

\* \* \*

(c) Discriminate in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization.

Respondent argues that MERC erred by finding that DeShane's participation in the public meeting was a protected activity under these provisions. We disagree. DeShane attended the public meeting and participated in various union activities, including voicing his opinion and demonstrating regarding matters pertaining to collective bargaining. DeShane was off-duty from his employment and attended the meeting on his free time. The record reflects that DeShane's participation constituted union activity of the type normally protected by the Act. Therefore, his attendance and speech at the public meeting constituted protected activity under PERA.

Respondent focuses much of its argument on its claim that the sit-in demonstration was a violation of MCL 750.170, and so, not entitled to the protection under the just-quoted provisions of PERA. MCL 750.170 provides:

Disturbance of lawful meetings—Any person who shall make or excite any disturbance or contention in any tavern, store or grocery, manufacturing establishment or any other business place or in any street, lane, alley, highway, public building, grounds or park, or at any election or other public meeting where citizens are peaceably and lawfully assembled, shall be guilty of a misdemeanor.

There is no evidence that DeShane or other sit-in demonstrators were charged, prosecuted, or convicted of disturbing the peace in violation of MCL 750.170. Respondent has failed to cite any caselaw that stands for the proposition that an uncharged alleged misdemeanor makes an otherwise ongoing protected union activity unprotected. MERC properly declined to accept respondent's conclusory assertion that DeShane's uncharged violation of MCL 750.170 made his actions *per se* unprotected.[2]

---

[2] Respondent also argues that even if a sit-in demonstration can be protected activity, this one cannot, because it was a pre-planned activity and not spontaneous. Respondent cites no authority

MERC agreed with respondent that DeShane participated in a sit-in demonstration that delayed the board's closed session. Because this occurred in the course of otherwise protected concerted activity, the Commission considered it as within the res gestae of that activity. It noted:

> Misconduct in the course of concerted activity, including insubordination, is not immune from discipline. See e.g., *AFSCME, Michigan Council Local 574-A v City of Troy*, 185 Mich App 739,744; 462 NW2d 847 (1990). The Commission however, has previously recognized, in the cases that follow, that tempers may become heated and disorderly conduct occur in the course of grievance meetings, collective bargaining sessions and other activity protected by the Act and that the protections afforded these activities under PERA would be illusory if employees were held to the same standards of conduct in those contexts as when dealing with their supervisors in the general workplace.

Disorderly conduct within the res gestae of protected activity is itself protected unless it is so egregious as to render the employee unfit for service. See *Detroit Pub Sch*, 22 MPER 89 (2009); *Benton Harbor*, 22 MPER ¶ 33 (2009). MERC specifically considered that question and concluded that the activity was not so egregious as to render DeShane unfit for service. The Commission, adopting the ALJ's factual findings, noted that DeShane's participation in the sit-in was brief, that he voluntarily left before there was any police involvement, and that he did not resort to or threaten violence. We, therefore, find that the record supports MERC's conclusion that DeShane's conduct was not so egregious as to remove him from the protections of PERA.

In *Baldwin Comm Sch*, 1986 MERC Lab Op 513, MERC found that the employer violated PERA by suspending an employee who, during a meeting to discuss a grievance, shouted, waved a pencil, and angrily accused his principal of being a homosexual and making homosexual advances. Although the employee's conduct was offensive, MERC found that it had not been so egregious as to remove it from the protection of PERA. Likewise, in *Unionville-Sebewaing Sch*, 1981 MERC Lab Op 932, 934, where a custodian was discharged for his "outburst of insubordination" at a meeting called to discuss working conditions, MERC found that the employee's conduct was not sufficient to remove the employee from PERA's protection since he had not demonstrated a propensity for violent or uncontrolled behavior. MERC has consistently applied the res gestae doctrine. See also *Detroit, AFSCME Local 207*, 22 MPER 32

---

for its assertion that the fact that a pre-planned demonstration should be treated differently than a spontaneous one for purposes of PERA, and it fails to explain why consideration of that allegation requires a different disposition. We have previously stated that, "where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court." *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) (quotation marks and citation omitted). Because respondent failed to cite supporting authority and does not explain the rationale for this claimed error, we find that respondent abandoned this claim of error, and decline to address it.

(2009); *Genesee Co Sheriff's Dept*, 18 MPER 4 (2005); *Isabella Co Sheriff's Dept*, 1978 MERC Lab Op 689.

The doctrine also has been applied by the National Labor Relations Board (NLRB) in relation to federal labor law. In *Gibraltar Sch Dist v Gibraltar MESPA-Transp*, 443 Mich 326, 335; 505 NW2d 214 (1993), the Michigan Supreme Court stated:

> We have long recognized that Michigan's public employment relations act, MCL § 423.201 et seq. is modeled on the [National Labor Relations Act (NLRA)]. Although not controlling, we look to federal precedents developed under the NLRA for guidance in our interpretation of the PERA. [Citations omitted.]

Thus, contrary to respondent's assertions, MERC could appropriately seek guidance from the NLRB's decisions for its interpretation of PERA. In *Consumers Power Co*, 282 NLRB 130, 132 (1986), the NLRB explained that where an employee is disciplined for conduct that is part of the res gestae of protected activities, the relevant question is whether the conduct is so egregious as to take it outside the protection of the NLRA, or of such character as to render the employee unfit for further service. The doctrine essentially "reflects a broad societal recognition that labor disputes are heated affairs that may abound with rough language and intemperate statements." *Jolliff v NLRB*, 513 F3d 600, 613 (CA 6, 2008). We believe that MERC appropriately considered NLRB cases in conjunction with its own decisions because the NLRB cases express and explain the same legal principle.

Respondent also relies on *Mich State AFL-CIO v Mich Employment Relations Comm*, 212 Mich App 472, 476-477; 538 NW2d 433 (1995), a case in which a union challenged the Legislature's revision of PERA's antistrike provision on the ground that it conflicted with teachers' constitutional rights to free speech and equal protection. Respondent relies on dictum for the proposition that sit-in demonstrations are not protected union activities under PERA. This Court's discourse concerned PERA's revised antistrike provision and whether it impaired a public employee's right to express or communicate regarding matters of employment. This Court focused on when and under what circumstances an employer could interfere with such conduct, and explained that a public employer may discipline an employee for such conduct if that conduct interfered with the employee's job performance. *Id*. at 496. This Court illustrated as follows:

> For example, a public employee who contends that she is not engaged in a work stoppage, but rather is simply expressing her views by picketing during hours when she is otherwise expected to be in the classroom, would be subject to discipline because her communicative act, while otherwise proper and lawful, interferes with the performance of her duties. [*Id*.]

Thus, contrary to respondent's contention, this Court did not hold that sit-in demonstrations categorically lack protected activity status under PERA. Sit-in demonstrations that occur during work hours on the job site that interfere with an employee's job performance may be subject to

disciplinary action, but offsite off-duty sit-in demonstrations, as occurred in this case, were not considered or ruled upon in that case.[3]

Finally, we find no merit in respondent's argument that DeShane's failure to *immediately* obey Pouget's request that he cease participation in the sit-in demonstration constituted insubordination subject to discipline under respondent's work rules. First, the findings of the ALJ, adopted in the MERC opinion, provide no support for the claim. The ALJ found that "DeShane did not refuse to obey Pouget's order to stop demonstrating and leave the room. Although DeShane asked to consult with Jackson first, the parties agree that DeShane left the Board's meeting room approximately five minutes after Pouget ordered him to do so." Second, as previously stated, if an employee is engaged in protected activity, at least while off the worksite, the mere fact that he does not follow a superior's order to cease the activity does not constitute sanctionable insubordination. If it did, every protected activity could be turned into grounds for discipline simply by telling the employee to cease participating in the protected activity.

MERC's factual findings were supported by competent, material, and substantial evidence on the record considered as a whole and its application of the res gestae doctrine in this case was not a substantial and material error of law. Therefore, we affirm MERC's conclusion that DeShane remained protected under PERA during his brief participation in the sit-in demonstration. Accordingly, when respondent imposed discipline upon DeShane for exercising his rights under § 9, it violated § 10(1)(a).

## B. Denial of Union Leave

The Union's charge involved a claim that respondent committed an unfair labor practice by discriminating against DeShane when it denied him Union leave. The ALJ and MERC required the Union to establish a prima facie case of unlawful discrimination. To prove unlawful discrimination under PERA § 10(1)(c), the charging party must establish the following elements: (1) employee union or other protected activity; (2) employer knowledge of that activity; (3) anti-union animus or hostility toward the employee's protected rights; (4) an adverse employment action; and (5) suspicious timing or other evidence that protected activity was a motivating cause

---

[3] We find no merit in respondent's reliance on *People v Mash*, 45 Mich App 459; 206 NW2d 767 (1973), and *AFL-CIO v MERC*, 212 Mich App 472; 538 NW2d 433 (1995), for its position that sit-in demonstrations are categorically unprotected activity. *Mash* is readily distinguished from the present case as it is wholly unrelated to PERA or labor law generally. Rather, *Mash* involved a defendant convicted for disturbing the peace, contrary to MCL 750.170, who challenged the statute on the grounds that it was unconstitutionally vague.

of the alleged discriminatory action. *Saginaw Valley State Univ*, 30 MPER ¶ 6 (2016); *Taylor Sch Dist*, 28 MPER ¶ 66 (2015); *Grandvue Med Care Facility*, 1993 MERC Lab Op 686, 696.[4]

The record reflects that the Union's president sought Union leave for DeShane to conduct union business. Respondent considered but denied the request based on § 2.07 of the CBA, which states:

> Section 2.07: Union Officers Special Days Off
>
> EMPLOYEES called upon to transact business of the Union or the Authority requiring their absence from duty shall, upon application (written if possible), be allowed to absent themselves from duty for a sufficient time to transact such business, provided the number applying for leave of absence shall not be so great as to be detrimental to service obligations of the Authority. No employee shall engage in Union activities during working hours without permission from a Department Manager. Employees will not be paid when absent from duty to conduct Union business or represent Union members.

Respondent based its denial on the fact that DeShane did not hold any Union office at the time of the request. The record reflects that respondent's denial occurred shortly after the board meeting at which DeShane demonstrated regarding matters pertaining to collective bargaining between the parties. Although the ALJ considered the timing of the decision, it did not rely solely on that for its decision. Rather, it relied on the uncontroverted evidence presented by the

---

[4] Respondent argues that this grievance was subject to arbitration under section 4.7 of the CBA and so was not properly before MERC. We disagree. In § 4.10 of the CBA, the parties agreed as follows:

> It is the intent of the parties that disputes between [respondent] and the Union should not be subject to resolution in more than one (1) forum. *The Union hereby agrees that if proceedings involving any matter which is or might be alleged as a grievance are instituted in any administrative action including, but not limited to, claims before a governmental board, agency or entity, or in any court, then such administrative or judicial proceedings shall be the sole remedy and such matters will no longer be arbitrable under this Agreement.* In the event that the Union elects to arbitrate any dispute with the Employer, then the Union hereby agrees that arbitration shall be the sole remedy for dispute and hereby waive any rights that may exist to institute proceedings involving this matter in any administrative action including, but not limited to, claims under state and federal law. The parties agree that this provision does not prohibit an individual from pursuing their individual statutory claims before a federal or state agency. [Emphasis added].

Thus, under § 4.10 of the CBA, the Union could elect the forum in which to pursue proceedings that might be considered matters otherwise subject to arbitration under the CBA.

Union that established a historical practice by respondent of granting Union leave to employees who were not Union officers. Based on that evidence, the ALJ concluded that the Union established a prima facie case. The ALJ explained that the evidence established that DeShane's involvement in protected activity served as a motivating cause of the alleged discriminatory action.

Once the Union established its prima facie case, the burden shifted to respondent to produce credible evidence of a legal motive and to show that the same action would have taken place even in the absence of the protected conduct. *Lake Erie Trans Comm*, 17 MPER ¶ 50 (2004). Nevertheless, the ultimate burden of proof remained with the Union. *Id*.

Respondent proffered two witnesses' testimonies to establish a legal motive for denying DeShane's request for Union leave. The ALJ concluded that their testimony did not support respondent's position because respondent's main witness, its chief operating officer, lacked credibility, and the other witness had no explanation for respondent's past practice of allowing Union leave for employees who were not Union officers. This Court has instructed that MERC must give due deference to the ALJ's findings of credibility when conducting its review. *Detroit v Detroit Fire Fighters Ass'n, Local 344, IAFF*, 204 Mich App 541, 554-555; 517 NW2d 240 (1994). Moreover, a finding that a respondent's purported motive for its actions lack merit or credibility can be considered circumstantial evidence that the respondent was motivated by anti-union animus. *Detroit Pub Sch*, 30 MPER 2 (2016); *Wayne Co*, 21 MPER 58 (2008). We find nothing in the record that suggests that the ALJ erred in its conclusions and MERC properly gave deference to the ALJ's credibility finding.

Further, the record reflects that the ALJ and MERC reviewed the evidence presented by respondent for its interpretation of § 2.07 of the CBA, and correctly found that respondent failed to proffer any substantive evidence to rebut the Union's evidence that established respondent's historical practice of unquestioningly granting Union leave requests for employees who were not Union officers. Those employees took time off without consequence. Although no direct evidence of anti-union animus is apparent on the record, the ALJ and MERC did not err by concluding that anti-union animus served as a motivating factor in respondent's decision to deny DeShane Union leave because the circumstantial evidence supported that conclusion and respondent failed to rebut that evidence. Therefore, MERC did not err by concluding that respondent violated PERA § 10(l)(a) and (c) by refusing to allow DeShane Union leave. MERC's decision rested upon competent, material, and substantial evidence on the record considered as a whole and was not a substantial and material error of law.

Affirmed. Appellee, as prevailing party, may tax costs.

/s/ Jonathan Tukel
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro