GOGEBIC COMMUNITY COLLEGE MICHIGAN EDUCATIONAL
SUPPORT PERSONNEL ASSOCIATION v
GOGEBIC COMMUNITY COLLEGE

Docket No. 218181. Submitted February 7, 2001, at Lansing. Decided June
8, 2001, at 9:10 A.M.

Gogebic Community College Michigan Educational Support Personnel
Association, the collective bargaining agent for certain employees
of Gogebic Community College, filed with the Michigan Employ-
ment Relations Commission (MERC) an unfair labor practice charge
concerning the college's unilateral decision to provide employee
dental benefits through self-insurance rather than continue cover-
age by a dental insurance carrier. The MERC dismissed the charge,
adopting a hearing referee's recommended decision to reject the
union's contention that the college violated § 10 of the public
employment relations act (PERA), MCL 423.210, by not bargaining
with the union concering the change in dental insurance. The union
appealed.

The Court of Appeals *held*:

1. The college did not have a duty to bargain concerning the
change in dental insurance. The collective bargaining agreement
provided for limits of dental coverage, deductibles, and copays, but
did not provide for a specific dental insurance carrier, in contrast
to provisions in the collective bargaining agreement naming a par-
ticular insurance carrier for health and vision benefits. The change
to self-insurance did not affect the limits of dental coverage,
deductibles, and copays. The collective bargaining agreement also
included a waiver clause that provided that the collective bargain-
ing agreement constituted the full agreement of the parties and that
each side waived the right to further bargaining concerning matters
covered by the agreement or not specifically referred to therein.
Under the clear and unambiguous provisions of the collective bar-
gaining agreement, the college had a right to change dental insur-
ance carriers or to self-insure for dental coverage and to do either
without bargaining with the union. The college did not violate § 10
of the PERA by not bargaining with the union concerning the change
to self-insurance.

2. The college's past practice of using the same dental insurance carrier before changing to self-insurance did not constitute an amendment of the collective bargaining agreement that required the college to maintain insurance with that carrier absent collective bargaining. A party who seeks to supplant the clear terms of a collective bargaining agreement with a purported past practice that contravenes the agreement must submit proofs illustrating that the parties had a meeting of the minds with respect to the new terms or conditions, i.e., that they intentionally chose to reject the negotiated contract and knowingly act in accordance with the past practice. The union made no showing that the parties had an understanding to continue coverage by the dental insurance carrier notwithstanding the clear terms of the collective bargaining agreement.

Affirmed.

LABOR RELATIONS — COLLECTIVE BARGAINING AGREEMENTS — PAST PRACTICES.

A party who seeks to supplant the clear terms of a collective bargaining agreement with a purported past practice that contravenes the agreement must submit proofs illustrating that the parties had a meeting of the minds with respect to the new terms or conditions, i.e., that they intentionally chose to reject the negotiated contract and knowingly act in accordance with the past practice.

*White, Schneider, Baird, Young & Chiodini, P.C.* (by *Kathleen Corkin Boyle*), for Gogebic Community College Michigan Educational Support Personnel Association.

*A. Dennis Cossi*, for Gogebic Community College.

Before: HOLBROOK, JR., P.J., and MCDONALD and SAAD, JJ.

SAAD, J. The union, Gogebic Community College Michigan Educational Support Personnel Association, appeals as of right from an order of the Michigan Employment Relations Commission (MERC) dismissing its unfair labor practice charge against the employer, Gogebic Community College. We affirm.

I. NATURE OF THE CASE

The collective bargaining agreement between the employer and the union provides that a specific insurance carrier will be used for health and vision benefits. However, regarding dental benefits, the subject of this dispute, the labor agreement simply requires the employer to maintain a specific level of benefits, but not a particular insurance carrier. With respect to the lack of any requirement in the labor contract for the employer to use a specific dental insurance carrier, the hearing referee found, and the MERC agreed, that the union had the opportunity to bargain for a dental carrier, as it did for a health and vision carrier, but failed to do so.

The union complains that, for years, the employer in fact used a specific dental carrier, but nonetheless changed to a self-insured program during the term of the 1996-98 collective bargaining agreement. Though the employer maintained the same level of dental benefits, the union claims the employer had an obligation to bargain for what the union characterizes as a unilateral, mid-term modification of the collective bargaining agreement.

The employer responds that (1) the collective bargaining agreement clearly provides for a level of dental benefits, but not a carrier, (2) the union had an opportunity to bargain for dental coverage (as it did for health and vision) and failed to do so, and (3) the collective bargaining agreement contains a waiver clause that provides "that the labor agreement constitutes the full agreement of the parties and that each side waives the right to further bargaining over matters covered by the agreement or not specifically

referred to therein." *Gogebic Comm College v Gogebic Comm College MESPA,* 1999 MERC Lab Op 28; 12 MPER ¶ 30020.

Accordingly, the employer argues and the hearing referee and the MERC agreed, as do we, that the employer had no duty to bargain regarding this matter, which was clearly and unambiguously covered in the collective bargaining agreement. To the union's claim that the past practice of using a specific carrier constituted an amendment of the collective bargaining agreement, requiring the employer to continue to use the same dental carrier absent collective bargaining, the hearing referee and the MERC disagreed, and we also disagree. The hearing referee and the MERC held, and we hold, that pursuant to *Port Huron Ed Ass'n v Port Huron Area School Dist,* 452 Mich 309; 550 NW2d 228 (1996), because the collective bargaining agreement provision regarding dental coverage was clear and unambiguous, the past practice here would have had to have been mutually understood, accepted, and agreed to by the employer as modifying the labor agreement. And, because there was no evidence of any such understanding by the employer, the past practice in question did not modify the collective bargaining agreement. Therefore, the clear language remains; the employer had no duty to bargain with respect to a carrier for dental coverage because this matter was covered by the collective bargaining agreement. The employer had a right to change carriers or to self-insure and, therefore, did not violate the public employment relations act (PERA), MCL 423.201 *et seq.,* by doing so. We affirm.

II. FACTS

The parties do not dispute the essential facts in this case, which we quote directly from the hearing referee's opinion:

The Gogebic Community College Michigan Educational Support Personnel Association represents a bargaining unit consisting of all part-time and full-time secretarial and clerical employees of the College. The collective bargaining agreement in effect at the time of hearing covered the period of August 1, 1996 through June 30, 1998. Article 8 of that agreement is a waiver clause, providing that the contract constitutes the full agreement of the parties and that each side waives the right to further bargaining over matters covered by the agreement or not specifically referred to in the agreement. Article 21 is entitled Insurance Protection and provides that health insurance coverage shall be MESSA [Michigan Educational Special Services Association] Super Med I. Section E of that article states that upon proper application, the College shall provide a subsidy for the MESSA VSP-3 vision program. Section C provides for the following dental coverage:

The College will pay the full premium cost for all full-time employees for a dental program based on a $50.00 deductible and 50% co-pay progressing to 100% each year the program is in effect. Benefits structure will be furnished to employees. This program will include major services and an orthodontic rider.

This provision has remained unchanged since the 1983-86 collective bargaining agreement. Since that time the College has provided Association members with the Ultradent dental insurance plan of the Michigan School Employers Group (SEG) Insurance Trust Fund, administered through the School Employers Trust (SET) . . . .

At the September 30, 1997 meeting of the College's Board of Trustees, the Board voted to approve self funding of dental coverage for the MESPA bargaining unit. Dean of Business Services T. J. Cvengros had previously met with Union Pres-

ident Nancy Gehrke on Friday, September 26, 1997, to inform her of the Board's intended action.

*   *   *

After looking at the premium and claims history, they decided to change to a self funded program. As a result, instead of paying a predetermined set premium, the College is now billed monthly from SET, paying a premium based on claims made, as well as an administrative cost of $2.25 per person. The College makes an original deposit required by SET and each month receives a billing which shows claims paid; the difference between the deposit premium and claims paid is the premium sent to SET each month.

Cvengros testified that under the self funded program, the benefits did not change, the claim forms and procedures remained the same, and the College continued to pay the full premium. The College also set aside $25,000 in a designated fund as a contingency for their self-funded vision and dental insurance coverage. In addition, the College has a general contingency fund of approximately $45,000 which could be utilized if necessary. [*Gogebic, supra,* 1999 MERC Lab Op 28; 12 MPER ¶ 30020.]

### III. PROCEEDINGS

On October 20, 1997, the union filed an unfair labor practice charge in response to the employer's change to a self-funded dental program. The union alleged that the employer violated § 10 of the PERA, MCL 423.210, by failing to bargain with the union before making a midterm, unilateral change. On October 26, 1998, hearing referee Nora Lynch issued a decision and recommended order, which held that the employer did not violate the PERA. Specifically, the hearing referee found that the collective bargaining agreement provided that the employer would pay the full premium for a dental program, but did not specify

a dental carrier. The hearing referee also determined that the union could have bargained for a specific carrier, as it did for health and vision, but failed to do so. The hearing referee further found that no substantive changes were made to the dental coverage and, because the union had exercised its bargaining rights with regard to the dental coverage, the employer was not obligated to bargain for the change to a self-insured program. Accordingly, the hearing referee found no violation of § 10 and recommended the dismissal of the union's charge.

The union filed exceptions to the hearing referee's decision and, on February 25, 1999, the MERC issued its decision and order, affirming the hearing referee's findings and conclusion. The MERC found that the agreement allowed the employer to unilaterally change the dental insurance program. Further, the MERC ruled that the union failed to show that the employer's past practice constituted an agreement that its use of the former dental carrier would continue. The MERC also ruled that the employer's change to a self-funded program did not materially alter the benefits to its employees. Accordingly, the MERC dismissed the union's charge.

### IV. STANDARD OF REVIEW

Regarding the MERC's findings of fact, our Supreme Court has ruled:

> [R]eview of the commission's decision is circumscribed by the statutory mandate that factual findings of the commission are conclusive if supported by competent, material, and substantial evidence on the record considered as a whole. Review of factual findings of the commission must be undertaken with sensitivity, and due deference must be

> accorded to administrative expertise. Reviewing courts
> should not invade the exclusive fact-finding province of
> administrative agencies by displacing an agency's choice
> between two reasonably differing views of the evidence.
> [*Amalgamated Transit Union v SEMTA*, 437 Mich 441, 450;
> 473 NW2d 249 (1991) (citations omitted).]

Regarding questions of law, we will set aside a legal
ruling by the MERC if it violates the constitution or a
statute, or if the ruling is " 'affected by a substantial
and material error of law.' " *Port Huron, supra* at 323,
quoting *Amalgamated, supra* at 450.

### V. ANALYSIS

It is well settled that "[p]ublic employers have a
duty to bargain over 'wages, hours, and other terms
and conditions of employment . . . .' " *Port Huron,
supra* at 317, quoting MCL 423.215(1). Accordingly, an
employer may not alter a term or condition of
employment unless it has bargained with regard to
the issue or unless the union has waived its right to
bargain with regard to it. *Id.* at 317-318. As our
Supreme Court articulated in *Port Huron*, to deter-
mine "whether an employer must bargain before alter-
ing a mandatory subject of bargaining," a court must
determine whether the issue is "covered by" the col-
lective bargaining agreement and, if not, whether the
union waived its right to bargain. *Id.* at 318-319.

Here, the issue of dental coverage is contained in
the collective bargaining agreement, which designates
a dental benefits structure under which the employer
will pay the premiums for a dental program with a
$50 employee deductible and a gradually decreasing
copay. Thus, the hearing referee and the MERC's fac-
tual finding that the issue of dental coverage was

"covered by" the collective bargaining agreement was supported by competent evidence.

Generally, " '[w]hen parties bargain about a subject and memorialize the results of their negotiation in a collective bargaining agreement, they create a set of enforceable rules—a new code of conduct for themselves—on that subject.' " *Port Huron, supra* at 319, quoting *Dep't of Navy v Fed Labor Relations Authority,* 295 US App DC 239, 248; 962 F2d 48 (1992). Here, the agreement does not specify a dental insurance carrier that the employer must provide; the agreement merely states that the employer will pay the premium for dental coverage and specifies the deductible and copay. Because the issue of dental coverage is "covered by" the collective bargaining agreement, the union exercised its right to bargain concerning this issue and could have negotiated for more specific terms, if it had wished to do so.

The union's ability to negotiate for a specific insurance carrier or medical plan is also evident from the health and vision clauses in the agreement. The agreement specifies that the employer will pay the premiums for the MESSA Super Med II and Super Med I plans and will pay a subsidy for the MESSA VSP-3 vision program. Despite this specificity of the health and vision insurance programs in the benefits article, the disputed dental clause merely refers to the premium for "a dental program." The other clauses make clear, however, that had the parties wanted to name a specific carrier, they could have easily and explicitly done so.

The agreement also contains a waiver clause that acknowledges that the parties

> each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement.

The waiver supports the proposition that the parties agreed that the employer could choose the dental carrier at its discretion. The clause also constitutes further evidence that the union exercised its right to bargain, yet failed to include language regarding a specific dental carrier.

Notwithstanding this evidence that the union and the employer bargained for and memorialized in the collective bargaining agreement the terms on which they agreed, and specifically left the dental coverage to the discretion of the employer, the union contends that the employer's change to self-funded dental coverage constituted a unilateral, midterm modification of the contract because the employer's past practice was to use the Ultradent dental insurance plan of the Michigan School Employer's Group (SEG). Were there no past practice regarding the dental carrier, the union would have no plausible argument that the employer violated the PERA by changing from using a carrier to becoming self-insured. That is, because the union had the opportunity to bargain about this very issue and failed to do so, and because the waiver clause of the collective bargaining agreement means the union waived the right to bargain further with respect to "covered" items of the labor agreement, the employer had the right to change carriers as long as it maintained the level of benefits mandated by the collective bargaining agreement.

### THE UNION'S PAST PRACTICE ARGUMENT

As in *Port Huron, supra,* the union argues that even if the labor agreement unambiguously grants the employer the authority to choose or change the dental carrier, the conduct of the employer (in using a specific dental carrier since the 1980s) established an enforceable past practice that could not be altered without bargaining. Again, as in *Port Huron,* the parties agree with the general principle that a past practice may create a term of the collective bargaining agreement that cannot be altered unilaterally, but instead must be negotiated.

Thus, the question is whether a past practice supersedes express contract language to the contrary. In *Port Huron,* our Supreme Court said:

> In order to create a term or condition of employment through past practice, the practice must be mutually accepted by both parties. *Amalgamated, supra* at 454. Where the collective bargaining agreement is ambiguous or silent on the subject for which the past practice has developed, there need only be "tacit agreement that the practice would continue." *Amalgamated, supra* at 454-455. However, where the agreement unambiguously covers a term of employment that conflicts with a parties' [sic] past behavior, requiring a higher standard of proof facilitates the primary goal of the PERA—to promote collective bargaining to reduce labor-management strife. A less stringent standard would discourage clarity in bargained terms, destabilize union-management relations, and undermine the employers' incentive to commit to clearly delineated obligations. [*Port Huron, supra* at 325-326.][1]

---

[1] The Court further opined:

> Requiring a higher standard of proof when there is express contract language to the contrary comports with previous Michigan

Here, as discussed above, the clear and unambiguous language of the agreement requires only that the employer pay the premium for "a dental program" with certain copays and deductibles. The agreement language is not susceptible to different meanings and plainly allows the employer the discretion to designate a dental carrier. Unambiguous language in the agreement "controls unless the past practice is so widely acknowledged and mutually accepted that it creates an amendment to the contract." *Port Huron, supra* at 329. In *Port Huron*, our Supreme Court further observed:

> "To vary the clear written mandates of the contract, the understanding or past practice must be evidenced by substantially stronger evidence than when utilized to interpret ambiguous language or to fill in areas where the contract is silent." [*Port Huron, supra* at 328, quoting *Buchholz Mortuaries, Inc v Embalmers Fed Labor Union No 21301*, 69 Lab Arb (BNA) 623, 626 (Roberts, 1977).]

To establish that a past practice amounted to a modification of the collective bargaining agreement,

> [t]he party seeking to supplant the contract language must submit proofs illustrating that the parties had a meeting of

---

cases regarding modification. Generally, parties are free to take from, add to, or modify an existing contract. *Soltys v Soltys*, 336 Mich 693; 59 NW2d 54 (1953). However, in the same way a meeting of the minds is necessary to create a binding contract, so also is a meeting of the minds necessary to modify the contract after it has been made. *Universal Leaseway System, Inc v Herrud & Co*, 366 Mich 473; 115 NW2d 294 (1962). A collective bargaining agreement, like any other contract, is the product of informed understanding and mutual assent. To require a party to bargain anew before enforcing a right set forth in the contract requires proof that the parties knowingly, voluntarily, and mutually agreed to new obligations. [*Port Huron, supra* at 326-327.]

the minds with respect to the new terms or conditions—intentionally choosing to reject the negotiated contract and knowingly act in accordance with the past practice. *In such situations, it is the underlying agreement to modify the contract that alters the parties' obligations, not the past practice.* [*Port Huron, supra* at 329-330 (citations omitted).]

Here, because the agreement does not require the employer to use a particular dental insurance carrier, the union was required to prove that the employer's past practice of using Ultradent amounted to a mutually accepted amendment of the contract. The union failed to make this showing. As the MERC observed, the union relies on "testimony that its chief negotiator expected that the SET-SEG Ultradent plan would continue to be utilized by the [e]mployer." *Gogebic, supra,* 1999 MERC Lab Op 28; 12 MPER ¶ 30020. However, as the MERC ruled, this "testimony is insufficient to establish that the [e]mployer ever intentionally agreed to relinquish its right to select a carrier." *Id.* We agree with the MERC's well-reasoned and thorough opinion. The evidence does not amount to a "meeting of the minds" that the employer would only use the Ultradent plan and falls far short of demonstrating conduct showing an unequivocal modification with "definite, certain, and intentional" terms. *Port Huron, supra* at 329, quoting *Gibson Refrigerator Co v United Automobile, Aircraft & Agricultural Implement Workers, Local 137,* 17 Lab Arb (BNA) 313, 318 (Platt, 1951).

In sum, the union failed to show that the employer's past practice constituted a mutual agreement to alter the plain terms of the collective bargaining agreement. The unambiguous language in the collective bargaining agreement therefore controls and

allows the employer to change dental carriers at its discretion. Accordingly, the MERC did not err in dismissing the union's unfair labor practice claim.[2]

Affirmed.

---

[2] We also reject the union's claim that the employer's change to a self-funded dental plan materially altered the employees' existing benefits. The record clearly shows that the most the employer has paid in one year for dental insurance is $19,000. Consequently, the MERC reasonably found that the $4,557.44 deposit the employer maintained each month for dental claim payments would not be depleted in any given month. Moreover, if the deposit is insufficient, evidence showed that the employer maintained a designated $25,000 contingency fund to replenish the deposit. Moreover, if for some reason the $25,000 contingency fund is depleted, evidence showed that the employer would replenish the deposit by transferring money from its $45,000 general contingency fund.

The union also argued that the employer created a unilateral veto power over payment of specific claims. However, no evidence in the record shows that the dental insurance plan would be administered in any different fashion than it had been previously administered. In fact, evidence shows that the employer intended to continue using SET to administer the plan and make decisions regarding coverage and that the employer would not participate in the plan administration. Moreover, evidence showed that no changes occurred regarding benefits, coverage, or administration of the dental plan. We give significant deference to the MERC's findings of fact, which, as noted above, "are conclusive if supported by competent, material, and substantial evidence on the record considered as a whole." *Amalgamated, supra* at 450. Accordingly, the union's claim that the employer's change to self-funding resulted in a change in benefits is without merit.